IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KIMBERLY MARIE TUCKER, | CV 16-132-BLG-SPW-TJC |
| Plaintiff, | |
| vs. | **FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

On August 30, 2016, Plaintiff Kimberly Marie Tucker ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff's claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-83(c). (Doc. 1.) On October 31, 2016, Defendant filed an Answer (Doc. 8) and the Administrative Record ("A.R.") (Doc. 9).

Presently before the Court is Plaintiff's motion seeking reversal of Defendant's denial and remand for further administrative proceedings, or alternatively an award of disability benefits. (Doc. 13.) The motion has been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B), and is fully briefed and ripe for the Court's review. (Docs. 13-15.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court hereby **RECOMMENDS** that the case be **REMANDED** for further administrative proceedings.

## I.    PROCEDURAL BACKGROUND

On January 24, 2013, Plaintiff filed an application for supplemental security income.  (A.R. 162-170)  Plaintiff alleged that she became unable to work because of "PTSD, anxiety, depression, IBS, memory loss, Hepatitis C, and pain in joints and muscles."  (A.R. 192.)  The Social Security Administration denied Plaintiff's application initially and upon reconsideration.  (A.R. 109-120.)  On January 28, 2014, Plaintiff filed a written request for hearing.  (A.R. 122-124.)  Administrative Law Judge Michele M. Kelley (the "ALJ") held a hearing on December 11, 2014.  (A.R. 39-80.)  On February 13, 2015, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 10-27.)  Plaintiff requested review of the decision on April 15, 2015.  (A.R. 7-8.)  The ALJ's decision became final on June 27, 2016, when the Appeals Council denied Plaintiff's request for review.  (A.R. 1-5.) Thereafter, Plaintiff filed the instant action.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g),

1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing

the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). Even if the Court finds that substantial evidence supports the ALJ's conclusions, however, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

## B.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett*, 180 F.3d at 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.   FACTUAL BACKGROUND

### A.   Medical Evidence

1.   <u>Treating Physician Evidence</u>

a.   *Troy Stiles, D.O.*

Plaintiff began mental health treatment with Dr. Troy Stiles in July 2011, and continued treatment through October 2014.  (A.R. 681-697; 806-820.)  Dr. Stiles placed Plaintiff on various medications for anxiety and depression.  (*Id.*)  Between July 2011 and March 2013, Dr. Stiles' notes indicated Plaintiff regularly reported anxiety and lack of concentration.  (*Id.* at 681-697.)  He noted Plaintiff had panic attacks in February 2012 and was isolating in April 2012.  (A.R. 690, 692.)  Dr. Stiles consistently noted that Plaintiff was appropriate in her appearance, had good eye contact, normal speech, and intact memory.  (*Id.*)  In March 2013, Dr. Stiles noted Plaintiff was living with family, which caused her stress, and that she was "isolating some."  (A.R. 681.)  Nevertheless, Plaintiff reported at that time that her medication was "really helpful," and Dr. Stiles stated Plaintiff "is actually doing the best that I have seen her in a while, in more stressful situations."  (*Id.*)

In November 2013, however, Dr. Stiles noted that Plaintiff was experiencing panic attacks "about every other day."  (A.R. 806.)  Dr. Stiles did not see Plaintiff again until May 2014.  (A.R. 809.)  At that time, Plaintiff indicated she was feeling "a lot worse," had ongoing anxiety, and was having problems with sleep, energy

and concentration. (A.R. 809-810.) In July 2014, Plaintiff had not improved, and had ongoing anxiety. (A.R. 813-14.) She reported having problems with mood, energy and concentration every day. (*Id*.) Dr. Stiles noted that Plaintiff was not able to see her therapist because "she isn't on disability right now and she can't afford it." (A.R. 813.) In October 2014, Plaintiff reported that she "hasn't been doing very well." (A.R. 817.) Dr. Stiles noted that Plaintiff was overwhelmed when she was out of her house, any form of stress was too overwhelming for her to deal with, and that "isolating was the only way she can tolerate life at this time." (*Id.*) Dr. Stiles indicated Plaintiff was having to pay cash for her medications and appointments, and that she was not seeing her therapist because she couldn't afford it. (*Id.*) Dr. Stiles recommended that Plaintiff try to get assistance through indigent mental health services. (*Id.*)

On February 26, 2013, Dr. Stiles completed a Medical Source Statement of Ability to do Work-Related Activities. (A.R. 678-680.) Dr. Stiles opined that Plaintiff had moderate limitations in understanding, remembering and carrying out simple instructions, and marked limitations in understanding, remembering, and carrying out complex instructions and making judgments. (A.R. 678.) He further opined that Plaintiff had moderate limitations in interacting with the public and co-workers, and marked limitations in interacting with supervisors (especially male authority figures) and responding appropriately to work situations and changes in

routine work settings.  (A.R. 679.)  Dr. Stiles stated that when Plaintiff has significant PTSD symptoms she would have marked difficulties that could last for weeks, but when she is less stressed, she would be able to function with only mild interference.  (A.R. 678.)  Dr. Stiles noted that Plaintiff's anxiety can lead to her being totally incapacitated and isolating in her home.  (A.R. 679.)

On November 20, 2014, Dr. Stiles completed a Mental Impairment Questionnaire.  (A.R. 921-925.)  Dr. Stiles opined that Plaintiff was unable to function in a work setting due to her ongoing excessive anxiety.  (*Id.*)  He stated Plaintiff could not tolerate normal work stress, would be unable to maintain regular attendance, and would be absent from work 3 or more days per month.  (*Id.*)  Dr. Stiles indicated Plaintiff had moderate limitations in interacting appropriately with the public, maintaining concentration, persistence or pace, remembering work procedures, and carrying out short and simple instructions.  (*Id.*)  He stated she had serious limitations with regard to maintaining attention for 2 hours, working in coordination with others, performing at a consistent pace, getting along with co-workers, and responding to changes in routine work setting.  (*Id.*)

b.    *Lori Denton, LCPC*

On July 19, 2013, Plaintiff was seen by Lori Denton, LCPC, at the Community Crisis Center for an indigent Mental Health Services Plan (MHSP) evaluation.  (A.R. 944-956.)  Ms. Denton's note indicates Plaintiff reported that

she was having panic attacks more frequently due to her inability to afford her medications. (A.R. 956.) Plaintiff also indicated she was unable to continue seeing her therapist and psychologist because she lost her Medicaid. (*Id.*) Ms. Denton noted that Plaintiff came to the evaluation in a "long gray dress that she did indicate was actually her nightgown and she was unable to dress appropriately for this evaluation." (*Id.*) Ms. Denton noted the plan was for Plaintiff to call her attorney about her disability claim. (*Id.*)

2. Non-Examining Medical Source Evidence

a. *Roger A. Larson, Psy.D.*

Roger A. Larson, Psy.D., reviewed Plaintiff's medical records, but had no contact with her, and did not testify at the hearing. He issued an opinion on June 26, 2013, at the initial level of review. (A.R. 83-95.) Dr. Larson opined that Plaintiff had mild limitations in activities of daily living, and moderate limitations in social functioning and maintaining concentration, persistence or pace. (A.R. 88.) Dr. Larson noted Plaintiff has difficulties coping with stress, but that her condition improves when her medication is taken regularly. (A.R. 87.) He determined Plaintiff's mental health condition is "controlled when on medication and does not severely affect her ability to carry out her [activities of daily living] independently." (A.R. 89.) Dr. Larson did not find Plaintiff was significantly limited in her ability to maintain regular work attendance. (A.R. 92.) Dr. Larson

opined Plaintiff "would do best in a low stress environment with limited interpersonal demands." (A.R. 93.)

b.   *Marsha McFarland, PhD.*

Marsha McFarland, PhD., also reviewed Plaintiff's medical records, had no contact with her, and did not testify at the hearing.  Dr. McFarland issued an opinion on October 3, 2013 at the reconsideration level of review.  (A.R. 98-108.) Dr. McFarland noted that since the date of Dr. Larson's opinion, Plaintiff reported going to the crisis center for increasing anxiety attacks, that she was not able to take her medication due to finances, and that she needed assistance from family to do activities of daily living.  (A.R. 103.)  Dr. McFarland opined that the additional evidence did not alter Dr. Larson's previous Mental Residual Functional Capacity assessment.  (A.R. 103.)

**B.   The Hearing**

1.   <u>Plaintiff's Testimony</u>

On December 11, 2014, Plaintiff testified at a hearing before ALJ Kelley in Billings, Montana.  (A.R. 39-72.)  Plaintiff testified that she lives in the basement of a house that her friend owns.  (A.R. 46.)  Plaintiff previously lived with her parents and her son.  (A.R. 47.)  Plaintiff stated that she suffers from panic attacks that make it difficult for her to function.  (A.R. 47-50.) Plaintiff stated she does not like being alone at home, and that she sits in the bathroom for several hours a day

because she feels safe there.  (A.R. 47, 52-53.)  Plaintiff testified that she doesn't go anywhere alone, usually does not drive, and has trouble remembering to shower or eat.  (A.R. 47-48, 55-56.)  Plaintiff often feels overwhelmed and goes to sleep.  (A.R. 50-51.)  When she is awake, she tries to make doctor's appointments and listens to the television.  (A.R. 52-53.)  Plaintiff stated she can't be around people, can't go on elevators, or be around men.  (A.R. 57.)  She feels like people are looking at her when she is in public, and she sometimes screams or cusses.  (A.R. 57.)  Plaintiff states she throws up when she has to leave the house.  (A.R. 60.)  Plaintiff said she had to quit most of her jobs because she couldn't remember directions.  (A.R. 60.)  Plaintiff testified about her physical condition, but stated that her biggest issue was anxiety.  (A.R. 67.)  Plaintiff acknowledged that she had been able to travel to Virginia by car to visit family.  (A.R. 68-71.)  Plaintiff did not drive, however.  Either her son or mother and sister drove her.  (A.R. 70.)  The trips took several days, and Plaintiff stopped and stayed in hotels with family members.  (A.R. 69.)

### 2.    Vocational Expert's Testimony

James Michael Fortune, a Vocational Expert, also testified before the ALJ.  (A.R. 73-80.)  The ALJ asked Mr. Fortune two hypothetical questions.  First, the ALJ asked Mr. Fortune to assume a person the same age as Plaintiff, and with the same work history and educational background, who could perform light work;

could understand, remember and carry out unskilled tasks; sustain attention, concentration, persistence and pace to complete unskilled tasks 8 hours a day, 40 hours a week; tolerate occasional interaction with the public, coworkers and supervisors; make only simple work decisions; tolerate occasional changes in work setting; and can do goal oriented work but cannot work at a fixed production rate pace. (A.R. 75.) Mr. Fortune testified that there would be jobs for such a person, including a laundry folder, office machine operator, small product packager assembler, and document preparer. (A.R. 77-78.)

Next, the ALJ asked Mr. Fortune to assume the same person but add the limitations that the person would be off task 20% of an 8 hour work day. (A.R. 78.) Mr. Fortune stated there were no jobs in the national economy that such a person could perform. (*Id.*)

Plaintiff's counsel asked Mr. Fortune whether the person discussed in the ALJ's first hypothetical would be capable of any jobs if the person were unable to make judgments on simple work-related decisions; unable to interact appropriately with supervisors, particularly if the supervisor was male; unable to respond to usual work situations and changes in routine. (A.R. 79.) Mr. Fortune stated no jobs would be available. (*Id.*) Plaintiff's counsel then asked how many absences are tolerated in unskilled work. (*Id.*) Mr. Fortune answered there would be a sustainability issue if the person missed 2 or more days per month. (*Id.*) Finally,

Plaintiff's counsel asked if a person limited to unskilled work, who had difficulty maintaining attention for 2 hour segments, working at a consistent pace or responding to routine changes would be capable of any work in the national economy. (*Id*.) Mr. Fortune responded that there would not be any jobs for such an individual. (A.R. 80.)

### C.    The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of January 22, 2013. (A.R. 15.) Second, the ALJ found that Plaintiff has the following severe impairments: "impingement of the bilateral shoulders, osteoarthritis of the right shoulder, degenerative disc disease of the cervical spine, obesity, depression, anxiety and personality disorder . . . ." (*Id.*) Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. (A.R. 17.)    Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(B) except the claimant can only frequently climb ramps and stairs and balance and occasionally climb ladders, ropes and scaffolds, stoop, kneel, crouch and crawl; can only frequently reach in the front and laterally with her bilateral upper extremities; can only occasionally reach overhead with her bilateral upper extremities; can understand, remember and carry out unskilled tasks up to a specific vocational preparation of two and sustain attention, concentration, persistence and pace to complete

unskilled tasks eight hours a day, forty hours a week; can have occasional interaction with the public, co-workers and supervisors; can make simple work decisions and tolerate occasional changes in a work setting; and cannot work at a fixed production rate pace, but can do goal oriented work.

(A.R. 19.)

The ALJ next found that Plaintiff is unable to perform any of her past relevant work.  (A.R. 24.)  Fifth, the ALJ found that Plaintiff could perform light, unskilled jobs that exist in significant numbers in the national economy in light of her age (40 years old at the time of her application, which is defined under SSA regulations as a younger individual), education (limited), work experience, and RFC.  (A.R. 25-26.)  Thus, the ALJ found that Plaintiff was not disabled.  (A.R. 26.)

## IV.    DISCUSSION

Plaintiff argues that the ALJ erred in the following ways: (1) failing to give proper weight to the opinion of treating physician, Dr. Troy Stiles; (2) failing to give proper consideration to the opinion of counselor Lori Denton; (3) improperly discrediting Plaintiff's testimony by failing to consider Plaintiff's financial ability to afford therapy or medication; and (4) failing to incorporate all of Plaintiff's impairments into the vocational consultant's hypothetical questioning.  (Doc. 13.)

/ / /

## A. The ALJ's Evaluation of the Treating Physician's Opinion

In her decision, the ALJ gave the opinion of Dr. Troy Stiles "little weight." (A.R. 23.) Plaintiff contends that the ALJ discounted Dr. Stiles' opinion without clear and convincing reasons. In response, the Commissioner argues the ALJ was only required to identify specific and legitimate reasons for discounting Dr. Stiles' opinion, and that the ALJ properly considered the evidence.

### 1. Legal Standard

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.) The Commissioner applies a hierarchy of deference to these three types of opinions. The opinion of a treating doctor is generally entitled to the greatest weight. *Id.* ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as

an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600

(9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

"However, the opinion of the treating physician is not necessarily conclusive as to

either the physical condition or the ultimate issue of disability." *Id*. *See also*

*Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating

physician's opinion is generally afforded the greatest weight in disability cases, it

is not binding on an ALJ with respect to the existence of an impairment or the

ultimate determination of disability.").

     If the treating physician's opinion is not well-supported by medically

acceptable clinical and laboratory diagnostic techniques, or is inconsistent with

other substantial evidence in the record, it is not entitled to controlling weight.

*Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security

Ruling 96-2p).  In that event, the ALJ must consider the factors listed in 20 C.F.R.

§ 404.1527(c) to determine what weight to accord the opinion.  *See* Social Security

Ruling 96-2p (stating that a finding that a treating physician's opinion is not well

supported or inconsistent with other substantial evidence in the record "means only

that the opinion is not entitled to 'controlling weight,' not that the opinion should

be rejected.  Treating source medical opinions are still entitled to deference and

must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.").  The

factors include: (1) the length of the treatment relationship and the frequency of

examination; (2) the nature and extent of the treatment relationship; (3)

supportability of the opinion; (4) consistency of the opinion with the record as a

whole; (5) the specialization of the treating source; and (6) any other factors

brought to the ALJ's attention that tend to support or contradict the opinion.  20

C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6).

Opinions of treating physicians may only be rejected under certain

circumstances.  *Lester,* 81 F.3d at 830.  To discount an uncontradicted opinion of a

treating physician, the ALJ must provide "clear and convincing reasons."  *Id.*  To

discount the controverted opinion of a treating physician, the ALJ must provide

"'specific and legitimate reasons' supported by substantial evidence in the record."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157

F.3d 715, 725 (9th Cir. 1998).  The ALJ can accomplish this by setting forth "a

detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions.

He must set forth his own interpretations and explain why they, rather than the

doctors' are correct."  *Reddick*, 157 F.3d at 725.  "The opinion of a nonexamining

physician cannot by itself constitute substantial evidence that justifies the rejection

of the opinion of either an examining physician *or* a treating physician."  *Lester*, 81

F.3d at 831.  However, "the findings of a nontreating, nonexamining physician can

amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

2. Analysis

Here, Dr. Stiles' opinion was contradicted by non-treating, state agency psychologists Roger A. Larson Psy.D. and Marsha McFarland, PhD. The non-treating psychologists opined that Dr. Stiles' opinion about Plaintiff's limitations were more restrictive than their findings. (A.R. 89, 103.) As such, the ALJ was required to set forth specific and legitimate reasons for discrediting Dr. Stiles' opinion, and not, as Plaintiff contends, clear and convincing reasons.

The ALJ opted to give significant weight to the non-treating psychologists' opinions over the opinion of Dr. Stiles.[1] (A.R. 23.) The ALJ concluded that Dr. Stiles' opinion would be "given little weight as it is not internally consistent with Dr. Stiles' treatment records." (*Id.*) An ALJ may reject a treating physician's opinion on the basis that a conflict exists between the treating physician's opinion and the physician's notes. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). But in this instance, the ALJ did not explain or offer any examples of how Dr.

---

[1] The ALJ determined the non-treating psychologists' opinions were internally consistent and well supported. (*Id.*) However, the Court notes that the non-treating psychologists' opinions pre-dated a year's worth of Dr. Stiles' treatment notes that indicated Plaintiff was not doing as well as she had previously been doing, and that she was not able to afford her mental health treatment and medications. (*See* A.R. 806-820.)

Stiles' opinion conflicted with his own treatment notes.  Instead, the ALJ pointed to Plaintiff's testimony about her ability to travel, go to the doctor, and live in a basement apartment.  (A.R. 23.)  Although an ALJ is permitted to consider inconsistencies between a treating physician's opinion and other evidence of record, the ALJ's stated reason for discounting Dr. Stiles' opinion – that his opinion was inconsistent with his own treatment records – was not supported at all.  Because the ALJ did not discuss with any particularity how Dr. Stiles' opinion was inconsistent with his treatment records, the ALJ failed to give specific and legitimate reasons for discounting Dr. Stiles' opinion.

In addition, the inconsistencies cited by the ALJ between Dr. Stiles' opinions and other evidence in the record do not take into account all of the testimony and record.  See e.g., *Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) (finding the ALJ did not fully account for the context of the testimony and other evidence, and his paraphrasing of the record was "not entirely accurate regarding the content or tone of the record.")   For example, the ALJ relied on the fact that Plaintiff lives in a basement apartment, without considering her testimony regarding the substantial difficulties she encounters in doing so.  The ALJ also referenced the Plaintiff's travel across the country to Virginia and her ability to go to the doctor, without considering that she was transported to and from Virginia by

family members, and is generally taken to her local doctor appointments by either family members or a friend. (A.R. 68-71; 48, 55.)

The ALJ also supported her finding that Dr. Stiles' opinion should be given little weight on the basis that Plaintiff's symptoms are better managed when she takes her medication as prescribed and is in regular therapy sessions. (A.R. 23.) As will be discussed below, however, the ALJ failed to take into account Plaintiff's ability to afford therapy and medication, and as such, this was not a legitimate reason to reject the opinion of Dr. Stiles.

Finally, as noted above, "[t]he ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2-6) in determining how much weight to afford the treating physician's medical opinion." *Ghanim*, 763 F.3d at 1161. Here, the ALJ did not appropriately address these factors in discounting the weight to be afforded to Dr. Stiles' testimony.

The Court finds, therefore, that the ALJ failed to set forth specific and legitimate reasons for affording Dr. Stiles' opinion little weight.

**B.     The ALJ's Consideration of the Opinion of Lori Denton, LCPC**

Plaintiff next argues the ALJ improperly discounted Ms. Denton's opinion without specific germane reasons. The Commissioner argues the ALJ was not required to discuss every piece of evidence submitted, and only needed to explain why significant probative evidence had been rejected. The Commissioner

contends Ms. Denton's opinion was not significant probative evidence of any particular functional limitation, and therefore the ALJ did not err in failing to address her opinion.

Licensed clinical professional counselors (LCPC) are not considered "acceptable medical sources." Social Security Ruling (SSR) 06-03P. Thus, information from non-acceptable medical sources can only establish insight into the severity of impairments and how they affect a claimant's ability to function. *Id.* An LCPC's opinion cannot establish the existence of a medically determinable impairment. *Id.* The ALJ may discount testimony from sources other than acceptable medical sources if he "gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quotations omitted).

Here, the ALJ does not state what weight Ms. Denton's opinion was afforded, but notes that Plaintiff saw Ms. Denton when her Medicaid ran out and she could no longer go to her normal therapy sessions. (A.R. 22.) The ALJ noted that Plaintiff reported to Ms. Denton that she was having more panic attacks, and that Ms. Denton observed Plaintiff was dressed in a nightgown. (*Id.*)

The Commissioner is correct that the ALJ is not required to discuss every piece of evidence submitted, but need only explain why significant probative evidence has been rejected. *Vincent ex. Rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1934). Here, the evidence which the ALJ failed to discuss was

not significant or probative. Ms. Denton's chart notes do not contain a diagnosis, analysis of symptoms, or assessment of functional limitations, but rather only provide a recitation of Plaintiff's complaints and plans to apply for social security benefits. (A.R. 956.) Ms. Denton did not opine on the severity of Plaintiff's impairments, or how the impairments affected Plaintiff's ability to function.

Thus, the Court finds that the ALJ was not required to discuss why she rejected Ms. Denton's opinion when an opinion had not been established.

### C.    The ALJ's Credibility Determination

Plaintiff argues that the ALJ's credibility determination was erroneous because the ALJ made only a general credibility finding without providing clear and convincing reasons for rejecting her testimony, and failed to consider the impact of Plaintiff's finances on her ability to obtain mental health therapy and medication. The Commissioner counters that Plaintiff waived her challenge to the adverse credibility determination because Plaintiff's Opening Brief did not include any substantive law, argument, or factual support to support her assertion.

As an initial matter, the Court finds that Plaintiff has not waived this issue. Contrary to the Commissioner's contention, Plaintiff's brief includes over two pages of argument, including citation to relevant case law regarding credibility. (Doc. 13 at 28-30.) Therefore, the Court will address the issue.

The credibility of a claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834)).

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the

lack of objective medical evidence into consideration when assessing credibility.[2]

*Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Nevertheless, the inability to afford medical treatment cannot be used as a basis for denying disability benefits or finding a claimant's testimony not credible. *Orn*, 495 F.3d at 638; *Gamble v. Charter*, 68 F.3d 319, 321 (9th Cir. 1995). "The relevant question is not whether somewhere on the planet there exists a [treatment] that the claimant could use, if only he could afford the enormous price; rather, the question is whether the claimant, himself, can realistically obtain such a [treatment]." *Gamble*, 68 F.3d at 322. *See, e.g. Fisher v. Colvin*, 2015 WL 1442064, at *17 (E.D. Cal. Feb. 20, 2015) ("Plaintiff's failure to receive medical treatment during the period when she had no medical insurance *cannot* support an adverse credibility finding.") (emphasis in original).

Here, the first step of the credibility analysis is not at issue. The ALJ properly determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, and there is no argument that

---

[2] With regard to Plaintiff's physical symptoms, the ALJ found that although Plaintiff alleged severe back and shoulder pain, her objective testing showed mild back and shoulder conditions, Plaintiff had only received conservative treatment for her conditions, and Plaintiff's pain was relieved through heat and over the counter medication. These were proper bases to discount Plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c)(3)(ii) (ALJ considers the "location, duration, frequency, and intensity" of pain and other symptoms).

Plaintiff is malingering. Therefore, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding her symptoms.

The ALJ based her decision, in part, on the fact that "claimant is not consistent with her therapy and medication." (A.R. 23.) However, the ALJ did not substantively address Plaintiff's lack of ability to pay for mental health services and medication in her decision. The ALJ merely noted in the summary of medical evidence that in July 2013, Plaintiff reported her Medicaid ran out and she could no longer go to her normal therapy sessions, and that in October 2014, Plaintiff stated she did not have money to pay for therapy. (A.R. 22.) The ALJ did not consider whether these facts adequately explained Plaintiff's failure to seek or follow her mental health treatment.

The ALJ also mentioned Plaintiff had been referred to indigent mental health services. (*Id.*) However, the ALJ did not specifically state that her adverse credibility finding was supported by the fact Plaintiff had been referred to indigent services. Moreover, even assuming the ALJ implicitly relied on the referral to find Plaintiff had access to mental health treatment, the referral the ALJ cited was from 2010. (A.R. 796-797 (clinical eligibility report for mental health services dated September 3, 2010).) The referral was not contemporaneous with the Plaintiff's inability to pay for mental health treatment in 2013-2014, which was the relevant time period when Plaintiff indicated to her treatment providers that she couldn't

afford therapy and medications. Therefore, the fact Plaintiff may have had access to mental health treatment in 2010 is not a sufficiently clear and convincing reason to support an adverse credibility finding concerning Plaintiff's consistency with her treatment in 2013-2014.

It appears Plaintiff re-applied for indigent mental health services in July 2013. (A.R. 944-956.) However, the mere fact that Plaintiff applied for indigent services in 2013 does not mean she qualified to receive those services. There is no evidence in the record showing one way or the other whether Plaintiff ultimately obtained such services or was in fact eligible for them. The inability to obtain treatment or medication, is the same as if no treatment or medication is available. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (stating "the medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered"). Therefore, based on the record, it was improper for the ALJ to base her credibility finding on Plaintiff's failure to consistently engage in treatment without considering Plaintiff's ability to obtain the treatment. *See* SSR 96-7p[3] (providing the ALJ may not "draw any inferences about an

_____

[3] Pursuant to SSR 16-3P, effective March 16, 2016, adjudicators are instructed to limit their evaluation of the intensity, persistence, and functionally limiting effects of symptoms to a two-step process that does not include a determination of claimant's credibility. At the time of the ALJ hearing, this ruling was not yet into effect. Therefore, the Court will review in accordance with SSR 96-7p, which was in effect at the time of the hearing and the ALJ's decision.

individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanation that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment").

As such, the Court finds that the ALJ's credibility finding is not supported by specific, clear and convincing reasons.

### D. The ALJ's Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocational Expert.

If a claimant shows she cannot return to previous work, the burden of proof shifts to the Secretary at step five to show that the claimant can do other kinds of work. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The Secretary may use a vocational expert to meet that burden. *Id.* Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Id.* "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422

Plaintiff argues that the only hypothetical the ALJ relied on to find there are jobs she can perform exceeded the limitations found by Plaintiff's treating

physician. As discussed above, the Court has determined the ALJ failed to adequately support her reason for discounting the medical evidence of Plaintiff's treating physician. Accordingly, this error infected the hypothetical that the ALJ relied on, and in turn, the ALJ's determination at step five. Therefore, the Court finds the ALJ's determination at step five is not supported by substantial evidence.

## V.    REMAND OR REVERSAL

Plaintiff asks the Court to remand this case for proper consideration of the medical evidence, Plaintiff's credibility, and vocational evidence. "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ shall properly evaluate the opinion of Plaintiff's treating physician. The

ALJ shall either support her findings with specific and legitimate reasons or afford Dr. Stiles' opinion greater weight. The ALJ shall also consider the impact of Plaintiff's lack of funding for mental health treatment and medications in assessing the treating physician's opinion and in re-evaluating Plaintiff's credibility. In addition, the ALJ shall reconsider whether Plaintiff can perform work in the national economy based upon a hypothetical that incorporates of all the limitations identified by Dr. Stiles, unless the ALJ provides sufficient reasons for rejecting his opinion.

## VI. CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 21st day of September, 2017.

TIMOTHY J. CAVAN
United States Magistrate Judge